UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
---------------------------------------------------------------- X
                                                                 :
DAVID ALVAREZ, et al.,                                           :
                                                                 :
                                Plaintiffs,                      :      **MEMORANDUM**
                                                                 :      **DECISION AND ORDER**
                -against-                                        :
                                                                 :      12 Civ. 0234 (BMC)
COCA-COLA REFRESHMENTS, USA, INC,                                :
                                                                 :
                                Defendant.                       :
                                                                 :
---------------------------------------------------------------- X

**COGAN**, District Judge.

      Defendant Coca-Cola Refreshments, USA, Inc. ("Coke") moves for an Order compelling arbitration of the claims brought by Guillermo Nunez, one of the plaintiffs in this case. As Coke notes, the Federal Arbitration Act requires a district court to direct the parties to proceed to arbitration on any claims that the parties have agreed to arbitrate. See 9 U.S.C. §§ 2-4; Dean Witter Reynolds, Inc. v. Byrd, 470 U.S. 213, 218, 105 S. Ct. 1238 (1985). Coke contends that this Court should compel arbitration because Nunez agreed to resolve his discrimination claims against Coke through an arbitration program known as "Solutions." Nunez denies having made this agreement.

      When determining whether parties have agreed to arbitrate, this Court applies a legal standard similar to that applied at the summary judgment stage. See Bensadoun v. Jobe-Riat, 316 F.3d 171, 175 (2d Cir. 2003). If there are no triable issues of facts in dispute, the Court may determine as a matter of law whether an Order compelling arbitration is warranted. See id. If, on the other hand, there is an issue of fact as to whether the parties agreed to arbitrate, the Court must hold a trial to resolve the factual issue. See id.

Nunez and Coke each submitted letters to this Court briefing the issue of arbitrability. Along with this briefing, the parties submitted declarations setting forth their respective versions of the facts surrounding Nunez's alleged agreement to participate in Solutions. According to Melanie Lewis, who served as Coke's Solutions Programs Director for more than ten years, Coke set out to implement Solutions with Nunez and his fellow non-union co-workers in 2006. Coke mailed these workers a Solutions brochure and program description which explained that Solutions is a mandatory and binding dispute-resolution mechanism that covers all legal claims against Coke. These documents also informed the workers that "all employees who accept or continue employment with [Coke] agree to resolve all legal claims against [Coke] through Solutions rather than through court." In her declaration, Lewis explained that the materials were mailed to Nunez at the address that he had provided to, and that was on file with, Coke. She explained that the letter was never returned to Coke as undelivered and that Coke has sent Nunez other materials, such as his W-2 forms, to this address. Coke argues that by continuing to work for Coke after receiving these materials, Nunez agreed to arbitrate his claim through Solutions.

Nunez and two of his co-workers also submitted declarations to this Court. In his declaration, Nunez stated that he never received "any information or paperwork in regards to resolving any legal matters through a so call 'solutions' mediation program." Nunez also explained that he has now seen the relevant Solutions brochure and that he is sure he would remember this brochure if he had seen it previously. Nunez also stated that he never attended an orientation session for Solutions.[1] Nunez's co-workers similarly state that they never received any Solutions materials.

---

[1] In her declaration, Lewis stated that orientation sessions were held for Coke employees regarding the details of Solutions. However, Coke does not contend that Nunez attended any of these sessions.

2

On these facts, Coke avers that a binding arbitration agreement exists as a matter of law. Coke primarily relies on an unpublished summary order from the Second Circuit, Manigault v. Macy's East, 318 F. App'x 6 (2d Cir. 2009). The relevant facts before the Manigault Court were nearly identical to the facts before this Court: an employee of the defendant submitted an affidavit stating that documents regarding Solutions – including a warning that continued employment with the defendant would amount to an agreement to participate in Solutions – were mailed to the home address on file for the plaintiff and were not returned as undeliverable. As here, the Manigault plaintiff responded with her own affidavit, and the affidavits of two co-workers, stating that the Solutions materials were never received. On these facts, the Second Circuit found that the defendant had established a "rebuttable presumption" that the plaintiff received the Solutions documents. The Court further held that the plaintiff's affidavit failed to rebut this presumption and that her decision to continue working for the defendant thus amounted to a manifestation of assent to participate in Solutions.

Because Manigault is an unpublished summary order, it is not binding on this Court. See 2d Cir. Local R. 32.1.1; Mendez v. Starwood Hotels & Resorts Worldwide, Inc., 746 F. Supp. 2d 575, 595 (S.D.N.Y. 2010) ("[A] summary order has no precedential effect on any court, although it has to be deemed some indication of how the Court of Appeals might rule were it to decide the issue in a binding opinion."). The Manigault Court's analysis is unsound. This Court therefore declines to apply Manigault's holding to the instant case.

As an initial matter, the Manigault Court found that a binding arbitration agreement may be formed when an employee declines to quit his job after being told, in no uncertain terms, that his continued employment will amount to an agreement to arbitrate. This conclusion finds support in New York contract law. See Maas v. Cornell Univ., 94 N.Y.2d 87, 94, 699 N.Y.S.2d

3

716 (1999) ("The conduct of a party may manifest assent if the party intends to engage in such conduct and knows that such conduct gives rise to an inference of assent."). But this holding must be harmonized with the New York Court of Appeals' directive that claims not be forced into arbitration "unless the evidence establishes the parties' clear, explicit and unequivocal agreement to arbitrate." Matter of Fiveco, Inc. v. Haber, 11 N.Y.3d 140, 144, 863 N.Y.S.2d 391 (2008). Nunez's decision to continue working for Coke – something that required no change in his behavior whatsoever – cannot be interpreted as a "clear" or "explicit" agreement unless Coke proves, by a preponderance of the evidence, that Nunez read or at least received, and thus had the opportunity and obligation to read, the Solutions materials.

The Manigault Court did not demand this level of proof. Instead, the Court held that the affidavit submitted by the defendant's employee – which stated that the Solutions materials were mailed to the plaintiff and were not returned to the defendant as undelivered – established a "rebuttable presumption" that the plaintiff received the Solutions materials. For support, the Court cited only to Meckel v. Cont'l Res. Co., 758 F.2d 811, 817 (2d Cir. 1985). Although the subject matter of Meckel was different from that of Manigault and the instant case, the Meckel Court considered a similar fact pattern regarding proof of mailing: the defendant submitted an affidavit explaining that a mailing had taken place and that, according to regular office procedures, the mailing must have been sent to the plaintiff. The Meckel Court held that this affidavit established a "rebuttable presumption" that the mailing – which notified debenture holders of their option to convert their debentures into common stock by a certain date – was, in fact, received.

Meckel was a case about notice. Correspondingly, the Court was focused on whether the mailing was sent and unconcerned with whether it was actually received. In the context of

4

providing notice, the Court explained that whether a sender's duty "is to sound the drum-beat, send up the smoke signal, or mail the notice, proof that he performed suffices, regardless of what the receiver heard, saw, or read." Id. By way of example, the Court cited to a New York Court of Appeals case concerning service of process and stated that "a constitutionally proper method of effecting substituted service need not guarantee that in all cases the defendant will in fact receive actual notice. It suffices that the prescribed method is one reasonably calculated, under all the circumstances, to apprise [the] interested part[y] of the pendency of the action." Bossuk v. Steinberg, 58 N.Y.2d 916, 447 N.E.2d 56 (1983).

In this context, it made sense for the Meckel Court to hold that a "rebuttable presumption" of receipt can be established merely by affirming that a mailing was, in all likelihood, accurately addressed and placed into the mailbox. This is because a party who is required to give notice is not required to guarantee receipt. But providing notice is different from forming a contract. The Solutions materials were not intended merely to place Nunez on notice; instead, the materials unilaterally extended an offer to an unwitting recipient and informed him that complete non-action would be interpreted as a manifestation of assent to the offer.

A party seeking to form a contract using this technique should not be entitled to the same "rebuttable presumption" of receipt to which a party giving notice is entitled. At most, Coke's affidavit creates an inference that the Solutions materials were mailed. In the face of Nunez's affidavit stating that he did not receive the materials, however, there is an issue of fact as to whether Nunez read the Solutions materials. This Court therefore cannot say, as a matter of law, that Nunez's decision to continue his employment with Coke amounted to a clear and explicit manifestation of assent to Coke's proffered arbitration agreement.

## CONCLUSION

The parties are directed to file a joint letter with this Court by June 8, 2012, explaining their respective positions on how to proceed. If Coke intends to pursue its motion to compel, the Court will proceed to trial on the issue of whether the parties agreed to arbitrate.

**SO ORDERED.**

                                                                                          s/ BMC
_____
                                                              U.S.D.J.

Dated: Brooklyn, New York
        May 29, 2012