UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
-------------------------------------------------------------- X
                                                               :
LUIS RODRIGUEZ,                                                :    **MEMORANDUM AND**
                                                               :    **ORDER**
                              Plaintiff,                       :
                                                               :    12 Civ. 234 (BMC)
              - against -                                      :
                                                               :
COCA COLA REFRESHMENTS USA, INC.,                              :
                                                               :
                              Defendant.                       :
-------------------------------------------------------------- X

**COGAN**, District Judge.

Plaintiff Luis Rodriguez is one of sixteen plaintiffs who brought this employment discrimination action under the New York State Human Rights Law, N.Y. Exec. Law § 290 *et seq*. ("SHRL"), and the New York City Human Rights Law, N.Y.C. Admin. Code § 8–101 *et seq*. ("CHRL"), in state court.[1] Defendant removed the case to this Court on the basis of diversity jurisdiction.

Plaintiff's particular job was, and is, a "Production Associate," which appears to be a laborer and machine operator, at defendant's bottling and distribution facility in Elmsford, New York. He alleges a discriminatory treatment claim on the basis of his Hispanic race in that (1) he was denied a transfer in the year 2000 by two white supervisors; (2) in 2005, he was made to operate dangerous machines despite taking medication that made him drowsy, and when his

---

[1] The sixteen plaintiffs worked at two plants – Elmsford, New York and Maspeth, Queens. All of the plaintiffs pled that they are covered by the CHRL, and defendant's summary judgment motion assumed that all plaintiffs fell under the CHRL as well as the SHRL. Upon reviewing the motion for summary judgment, I pointed out to the parties that there seemed no reason why those plaintiffs who worked solely at the Elmsford plant would be covered by a New York City ordinance because Elmsford is in Westchester County. The parties now seem in agreement on this point, and because Rodriguez worked only at Elmsford, I will consider his claims as arising only the SHRL, and disregard the briefing as to the CHRL.

request for reassignment to easier machines was denied, he had a serious accident on a dangerous machine; (3) in 2008, he was denied a promotion to a lab position over a white employee, who was given an advantage in taking the test for this position because the white employee, unlike plaintiff, was not monitored during the test; (4) white workers, unlike him, were paid overtime even though they hadn't earned it, and white workers who missed a weekday were paid overtime for their weekend makeup days, while plaintiff was not paid overtime for weekend makeup days; (5) he is assigned to work on less desirable machines than white workers; (6) his grievances are treated less favorably than white workers' grievances.

In addition to his discrimination claims, plaintiff has alleged a hostile work environment claim. This claim appears to be based exclusively on racial slurs or insulting remarks which he alleges he had to endure. Specifically, he asserts that he has heard: (1) one supervisor, who he describes as "non-black," say on several occasions "in or around" 2005, "Negroes are lazy, they don't want to work." That same supervisor said repeatedly, "Puerto Ricans only want to live on welfare."[2] Prior to that time, another white supervisor yelled at plaintiff, as he was leaving the plant, "f—g Puerto Rican."[3] Most recently, in 2011 or 2012, plaintiff objected to the recurrent

---

[2] Because defendants moved for summary judgment as to all sixteen plaintiffs, each of whom, at first review, appeared to have disparate claims arising out of individualized circumstances, the record on defendant's motion was enormous and unmanageable. To make resolution more difficult, the parties' briefs cited only to their Local Rule 56.1 Statements, rather than to the evidence in support of the allegations in their Local Rule 56.1 Statements, a practice that courts have recognized makes it unduly difficult to examine the actual contents of the record. See e.g. Doeblers' Pa. Hybrids, Inc. v. Doebler, 442 F.3d 812 (3d Cir. 2006); Skagen v. Sears, Roebuck & Co., 910 F.2d 1498 (7th Cir. 1990). I therefore directed the parties to resubmit those portions of their briefs and renumbered exhibits that pertain to this plaintiff only, and, further, to annotate the citations in their briefs so that they refer to the numeric designations on the exhibits themselves rather than only the Rule 56.1 Statements. In addition, I cautioned them because of the volume of this record, I would not go beyond their citations. This is because Federal Rule of Civil Procedure 56 "does not impose an obligation on a district court to perform an independent review of the record to find proof of a factual dispute." Amnesty Am. v. Town of W. Hartford, 288 F.3d 467, 470 (2d Cir. 2002). Rather, under Rule 56(c)(3), a district court is obligated only to consider the materials cited to it by the parties.

[3] Plaintiff also complains about other racist statements that were allegedly made by one white co-worker and two white supervisors. However, I am not considering those on this motion because plaintiff relies exclusively on second and third hand hearsay to show they were made, much of which hearsay comes from unidentified sources

way in which white supervisor Kevin Flood spoke to him, which, although not racist, plaintiff considered "disrespectful" (one example given by plaintiff is "what the hell are you doing here"). In addition, the record contains an affidavit from one of plaintiff's co-workers who states that he had heard Kevin Flood use a vile epithet to describe black people to him on multiple occasions. Additional facts as they relate to each of plaintiff's points will be set forth below.

Even construing the record most favorably to plaintiff, see Mihalik v. Credit Agricole Cheuvreux North America, Inc., 715 F.3d 102 (2d Cir. 2013), the pervasive problem with plaintiff's case is that it is based almost entirely on inadmissible evidence. This evidence consists of the following: (1) hearsay and double hearsay that plaintiff heard from others; (2) conclusory assertions of discrimination; and, relatedly (3) plaintiff's subjective belief that he is a victim of racism. Once all of this is stripped away, as it must be under Fed. R. Civ. P. 56(c), there is little left, certainly not enough to raise any issues of fact that would support a jury verdict. Defendant's motion is therefore granted.

I. **Discrimination Claims**

Plaintiff's discrimination claims under the SHRL are analyzed the same way they would be analyzed under Title VII of the Civil Rights Act of 1964, 42 U.S.C. §§ 2000e et seq. (2006). See Rojas v. Roman Catholic Diocese of Rochester, 660 F.3d 98 (2d Cir. 2011). This is the familiar test under McDonnell Douglas Corp. v. Green, 411 U.S. 792 (1973).

The statute of limitations for claims of discrimination under the SHRL is three years from the date the promotion was denied. See N.Y. Exec. Law § 296; N.Y. C.P.L.R. § 214(2) (McKinney 2003). Almost all of plaintiff's discrimination claims are time-barred, as this action

---

(e.g. "other co-workers were well aware …"), and plaintiff has no non-hearsay knowledge of them. See Fed. R. Civ. P. 56(c) (party opposing summary judgment must point to admissible evidence).

3

was not commenced until January, 2012. Although plaintiff makes a passing reference to the "continuing violation doctrine," he cannot avoid the extensive case law holding that discrete discriminatory acts, separately actionable, are not subject to that doctrine. See National Railroad Passenger Corp. v. Morgan, 536 U.S. 101 (2002); Chin v. Port Auth. of New York & New Jersey, 685 F.3d 135 (2d Cir. 2012); Thomas v. N.Y.C. Dep't of Educ., No. 10-cv-4643, 2013 WL 1346258 (E.D.N.Y. March 29, 2013).[4] These include the denial of his transfer request in 2000; failure to accommodate his medically-induced drowsiness leading to his accident in 2005;[5] and failure to promote him in 2008. All of these discrete acts are of a kind that is not subject to the continuing violation doctrine because each could be the subject of a separate suit immediately upon their occurrence. See Morgan, 536 U.S. at 113 (citing "failure to promote" and "denial of transfer" as "easy to identify" examples of discrete acts); Thomas, 2013 WL 1346258 at *11 (same); Ugactz v. United Parcel Serv., Inc., No. 10–CV–1247 (MKB), 2013 WL 1232355, at *5 (E.D.N.Y. Mar. 26, 2013) ("Plaintiff's failure to accommodate claims are not continuing violations but discrete actions.").

---

[4] Plaintiff misleadingly cites to Annis v. Cnty. of Westchester, 136 F.3d 239 (2d Cir. 1998), for a contrary conclusion. Putting aside the fact that Annis was not a promotion case, it seems clear enough, as the Court in Thomas noted, that some of the statements about the continuing violation doctrine that the Second Circuit made prior to the Supreme Court's decision in Morgan need to be carefully reevaluated in light of that decision. Indeed, this Court has not found a single case applying the continuing violation doctrine to a failure to promote claim since Morgan, and the doctrine now appears relegated to the hostile work environment context.

[5] Plaintiff has offered three different possibilities for when he was allegedly denied this accommodation. At his deposition, he testified quite clearly that he couldn't remember when that happened. In his brief, he stated that it happened in 2005. In his affidavit in opposition to the motion, he said it happened in 2012. Plaintiff cannot create a factual issue by suddenly "remembering" in an affidavit that which he could not remember at his deposition. See O'Leary v. The City of New York, __ F. Supp.2d __, No. 11 cv 1578, 2013 WL 1482733 at*1 n.1 (E.D.N.Y. 2013). The last-offered 2012 date is particularly amenable to exclusion because the brief asserts that after he was denied this accommodation: "Tragically, in 2005, he suffered a serious accident at one of these machines, by which he was knocked unconscious as he fell to the ground. Mr. Rodriguez required surgery and seven months of recovery." (citations omitted). Obviously, there are medical records to support this statement and it could not have happened in 2012.

Plaintiff's next assertion is that white workers were paid overtime when he was not, i.e., white workers were paid overtime even though they did not work overtime, or were paid overtime on "make up" days for when they missed work, and plaintiff was not given this opportunity. There is no evidence in the record that any white worker was treated in the fashion plaintiff describes; he could not offer a single name, just his subjective belief, and he has offered no evidence outside of his own belief. He has failed to state a *prima facie* case.

For a similar reason, plaintiff's claim of disparate job assignments fails. There is simply no evidence to support plaintiff's anecdotal observation that as a general matter, white workers received assignments that he would have liked to have had and that he and other minority workers received assignments that he considered less desirable. To the contrary, even plaintiff admits that he observed white workers at times doing the "worst" jobs, and minority workers at times doing the "best" jobs, and one of the (only) two white workers he could identify as having replaced him on a "best" (or at least "better") job had seniority over him anyway. Plaintiff's issue is the numerical allocation of assignments between whites and minorities, but he apparently took no discovery on this issue or received nothing of probative value, as all he can offer is his subjective impression that the allocation, in his view, reflects racism. Even if I were to assume plaintiff's *prima facie* case because of the *de minimis* standard that it requires, see Beyer v. Cnty. of Nassau, 524 F.3d 160 (2d Cir. 2008), I do not see how plaintiff's attorney could think that a jury could draw a reasonable inference of discrimination based on the unquantified, anecdotal, and conclusory snippets of subjective belief that plaintiff has offered on this motion.

Plaintiff's disparate work assignment fails for the additional reason that he does not dispute that all the assignments he received were within his job description, and it is well established that assignments that are part of an employee's normal responsibilities are not

5

"adverse employment actions" where, as here, the rate of pay and benefits remains the same. "[A]llegations of . . . unfair work assignments, without more, do not amount to 'adverse employment actions' because they are not materially adverse changes in the terms or conditions of [the plaintiff's] employment." Hubbard v. Port Auth. of N.Y. & N.J., No. 05 Civ. 4396, 2008 WL 464694, at *11 (S.D.N.Y. Feb. 20, 2008). Accord Costello v. N.Y. State Nurses Ass'n, 783 F. Supp. 2d 656, 677–78 (S.D.N.Y. 2011) ("[G]enerally giving preferential treatment with respect to work assignments to others outside of [the plaintiff's] protected class" does not qualify as an adverse employment action where the plaintiff did not otherwise suffer a demotion, material loss of benefits, significantly diminished material responsibilities, or other materially adverse change in the terms and conditions of his employment); McCowan v. HSBC Bank USA. N.A., 689 F. Supp. 2d 390, 408 n. 8 (E.D.N.Y. 2010) ("[In] the absence of any evidence that . . . job assignments had any negative results, such as a denial of pay increase or bonus or a suspension, such [assignments] cannot constitute [an] adverse employment action [ ] as a matter of law."); Billingslea v. Ford Motor Co., Inc., No. 06–cv–0556, 2010 WL 4861500, at *7 (W.D.N.Y. Nov. 30, 2010) ("A plaintiff's assigned task, however undesirable it may be, does not constitute an adverse employment action under Title VII if it falls within his or her job responsibilities."); Aspilaire v. Wyeth Pharm., Inc., 612 F. Supp. 2d 289, 305 (S.D.N.Y. 2009) (assignments to tasks within the scope of an employee's job do not constitute adverse employment actions since such assignments are "consistent with the terms and conditions of [the] plaintiff's employment."). This principle attracts the oft-stated refrain that federal courts will not "act as a super-personnel department" to get into the weeds of an employer's personnel management and resource allocation decisions absent some evidence *aliunde* of discriminatory intent. Porter v. Donahoe, __ F. Supp. 2d __, 2013 WL 4505409, at *6 (E.D.N.Y. Aug. 23,

6

2013) (quoting Byrnie v. Town of Cromwell, Bd. of Educ., 243 F.3d 93, 103 (2d Cir. 2001)). There is no such evidence here whatsoever.[6]

Finally, plaintiff's claim of disparate treatment in defendant's grievance procedure is utterly lacking in proof. Plaintiff complains of two incidents. First, in 2010, a black supervisor rejected his grievance when plaintiff was written up for taking off early to go to the hospital. There is no evidence whatsoever of discriminatory motive behind this rejection. Plaintiff essentially would have a jury find that he was written up because his supervisor was of a different minority group. Plaintiff cannot make a *prima facie* case out of this incident because getting written up, with no loss of pay, is not an adverse employment action. See Chang v. Safe Horizons, 254 F. App'x 838, 839 (2d Cir. Nov. 5, 2007) (unpublished opn.) ("[O]ral and written warnings do not amount to materially adverse conduct . . ."); Ward v. Empire Vision Centers, Inc., 686 F. Supp. 2d 243 (W.D.N.Y. 2010); Collier v. City of New York, No. 07-cv-532, 2009 WL 464937 (S.D.N.Y. Feb. 25, 2009); see generally Galabya v. N.Y.C. Bd. of Educ., 202 F.3d 636, 640 (2d Cir. 2000) ("A materially adverse change might be indicated by a termination of employment, a demotion evidenced by a decrease in wage or salary, a less distinguished title, a material loss of benefits, significantly diminished material responsibilities, or other indices . . . unique to a particular situation.").

Plaintiff's second incident of disparate grievance processing is that when a co-worker complained that plaintiff was late to relieve him, the supervisor moved plaintiff off of that more desirable assignment and gave him a less desirable assignment. Again, a less desirable work assignment is not an adverse employment action. And curiously, plaintiff nowhere denies that he

---

[6] I reject defendant's contention that part of plaintiff's work assignment claim, where he recites one specific incident of reassignment, is time-barred because he cannot remember when it occurred. Because the statute of limitations is an affirmative defense, plaintiff's lack of recollection, ironically, saves his claim from the statute. But as shown above, it fails for lack of evidence in any event.

7

was late in relieving his co-worker; he simply believes that since he was only a few minutes late, the reassignment must have been based on illegal discrimination. Plaintiff's "mere subjective belief that he was discriminated against because of his race does not sustain a race discrimination claim." Moore v. Kingsbrook Jewish Med. Center, No. 11–CV–3625, 2013 WL 3968748 at *6 (E.D.N.Y. July 30, 2013). Finally, there is no admissible evidence that plaintiff's co-worker actually complained about him. Plaintiff says he "heard" of such a complaint from somebody, but he does not identify who, and he does not attribute his information to any of defendant's managerial employees.

**II. Hostile Work Environment Claim**

In order to raise an issue of fact as to a claim of hostile work environment under the SHRL, plaintiff must adduce facts showing that "the workplace was permeated with discriminatory intimidation, ridicule, and insult, that is sufficiently severe or pervasive to alter the conditions of the victim's work environment." Mack v. Otis Elevator Co., 326 F.3d 116, 122 (2d Cir. 2003). Again, the analytical framework for this test is the same under Title VII and the SHRL. See Van Zant v. KLM Royal Dutch Airways, 80 F.3d 708 (2d Cir. 1996).

Plaintiff's brief does not identify all or perhaps even most of the conditions that he contends constitute a hostile work environment. All he says is that he "was subjected to a hostile work environment based on race discrimination, as well as several racist comments that he heard or else of which he was aware." There is no effort to identify what acts comprise this assertion of "race discrimination," and by making such a conclusory assertion, plaintiff has prevented me from identifying whether there is a factual issue of environmental racial hostility based on these unspecified acts. If there is something more than racist remarks that constitute his claim of hostile work environment, he has waived the argument by failing to tell me what it is.

8

Plaintiff does identify the specific racist comments upon which he is relying; they are set forth above. They are far too scattered to satisfy the "severe and pervasive" requirement for a hostile work environment claim. He identifies only a single racist comment that was directed at him, and that occurred eight years before he commenced this action. He does not feel his current supervisor treats him with proper respect, but he has never heard that supervisor make any racial remarks to him. Lack of respect is non-actionable because the anti-discrimination laws do "not set forth a general civility code for the American workplace." Burlington Northern & Santa Fe Ry. Co. v. White, 548 U.S. 53, 68, 126 S.Ct. 2405 (2006).

Plaintiff also claims that his co-workers heard supervisors make racist remarks. However, while those remarks may be admissible to demonstrate bias on the part of the supervisors, the fact that plaintiff never heard of many of them until this lawsuit makes them akin to a tree falling in a forest with no one to hear it. A plaintiff cannot assert a hostile work environment based on co-workers telling him things; he has to experience it himself. That plaintiff was troubled by his co-workers approaching him and telling him about racist remarks his supervisors directed at others does not give rise to a claim for a hostile work environment. Instead, if he is sufficiently troubled, plaintiff could approach his Human Rights department and give his employer a chance to investigate and remedy the problem, if one exists.[7]

---

[7] Plaintiff did vaguely testify that on two occasions when he heard racist remarks before 2005, seven years before he commenced this lawsuit, he orally reported them to his union representative or a supervisor. Although he says that nothing came of his reports, it is telling that he never again personally heard such racist remarks.

9

## CONCLUSION

Defendant's motion for summary judgment as to the claims of Luis Rodriguez is granted.

**SO ORDERED.**

Digitally signed by Brian M. Cogan
_____
U.S.D.J.

Dated: Brooklyn, New York
       September 13, 2013